| | | |
|---|---|---|
| WILLIAM STRAT KIMSEY, | ) | |
| | ) | Case No. 2:24-cv-209 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Cynthia R. Wyrick |
| RONNIE LAWSON, | ) | |
| | ) | |
| *Respondent*. | ) | |
| | ) | |

## MEMORANDUM OPINION

William Strat Kimsey filed a pro se federal habeas petition under 28 U.S.C. § 2254, seeking to challenge his 2001 Grainger County judgments of conviction for attempted aggravated sexual battery and attempted rape of a child (*see* Doc. 2). Respondent has moved to dismiss the petition as time-barred (Doc. 22),[1] and Petitioner has filed a response in opposition to Respondent's motion (Docs. 24, 25). For the reasons set forth below, Respondent's motion will be **GRANTED**, and the petition will be **DISMISSED WITH PREJUDICE**.

## I.     RELEVANT FACTUAL AND PROCEDURAL HISTORY

On August 21, 2000, a Grainger County Grand Jury indicted Petitioner for the rape of a child and aggravated sexual battery after his biological children, JK and AK, informed others of abuse (*see* Doc. 19-1, at 2–3). On May 10, 2001, Petitioner pleaded guilty to attempted rape of a

---

[1] Before filing his response, Respondent moved for an extension of time to respond to the Petitioner's habeas petition by July 9, 2025. (Doc. 20). While the Court did not rule on this motion, the Respondent still filed a response on July 9, 2025. Consequently, the Court considers the Respondent's motion timely and he motion for extension (Doc. 20) is hereby **DENIED as moot**.

child and attempted aggravated sexual battery and was sentenced to an effective sentence of twelve years, with release into the community corrections program after one year of incarceration (*See id.* at 22–23, 25–26).  Petitioner's judgments of conviction were entered on May 22, 2001.  (*Id.* at 25–26.)  Petitioner did not take a direct appeal.

In 2007, Petitioner, through counsel, filed a petition for post-conviction relief.  (Doc. 21-1, at 1–6.)  On April 21, 2010, an order was entered voluntarily dismissing the petition with prejudice.  (*Id.* at 9, 12.)

In the interim, Petitioner learned that the victims' stepfather, Frank Payne, impregnated JK and was convicted of aggravated statutory rape and incest.  (*See* Docs. 19-2, at 6–7, 36–37.)  In August and December 2010, JK provided Petitioner affidavits explaining that when she told police years earlier that "Daddy" molested her, she was referring to her stepfather, Frank Payne.  (*See id.* at 28–31, 33–34).  Also in 2010, Petitioner's son and AK provided Petitioner with affidavits stating that their statements in 2000 were either falsified or misinterpreted by officials from the Department of Human Services.  (*See id.* at 78, 80).  Asserting that these affidavits and Frank Payne's convictions were newly discovered evidence proving Petitioner's innocence of the crimes to which he pled guilty, Petitioner filed a petition for writ of error coram nobis and supporting exhibits in the trial court.[2]  (*Id.* at 4–84.)  The State moved to dismiss the petition, arguing that it was filed nine years past the statute of limitations' one-year limit, and that the victims' statements were not newly discoverable evidence.  (*Id.* at 85–87.)

On July 23, 2012, before the trial court resolved the error coram nobis petition, Petitioner reached an agreement with the State that resolved the error coram nobis petition and the dormant post-conviction petition, as well as a pending violation of Petitioner's convictions of community

---

[2] Petitioner also argued in the petition that his mental condition rendered his guilty plea involuntary.  (*See* Doc. 19-2, at 18–22.)

2

corrections release.  (Doc. 21-1, at 9–13.)  Under this agreement, Petitioner's 2004 resentencing on his initial convictions was set aside through post-conviction relief, he pled guilty to violating the conditions of his community corrections release, and Petitioner agreed to voluntarily dismiss with prejudice both his post-conviction and error coram nobis petitions (*Id.* at 9, 12.)  New judgments were entered resentencing Petitioner to an effective ten-year sentence (less time served) on the underlying convictions, with community supervision for life following sentence expiration, as mandated by Tennessee law.  (*Id.* at 10, 12, 14–15.)  *See* Tenn. Code Ann. § 39-13-524.

Petitioner then filed this federal habeas petition on or about November 1, 2024.  (*See* Doc. 2; Doc. 2-1.)  On January 13, 2025, this Court ordered Respondent to respond to the petition (Doc. 7.)  Petitioner thereafter submitted several letters to the Court.  (*See* Docs. 9, 13, 15, 16.)  Respondent subsequently submitted the relevant portions of the State-court record (Docs. 19-1, 19-2, 21-1) and the instant motion to dismiss the petition (Doc. 22) and memorandum in support (Doc. 23).  On July 25, 2025, Petitioner filed a response opposing the motion (Doc. 24) and a supporting memorandum (Doc. 25).  This matter is ripe for review.

## II.     STATUTE OF LIMITATIONS

The instant petition for writ of habeas corpus is subject to the statute of limitations of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The issue of whether Respondent's motion should be granted turns on the statute's limitation period, which provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or the laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The federal limitations period is tolled while a "properly filed application for State post-conviction or other collateral review" is pending. *See* 28 U.S.C. § 2244(d)(2). In "rare and exceptional circumstances," the limitations period may be equitably tolled. *See Smith v. Frank*, No. 3:22-CV-311-DCLC-DCP, 2023 WL 2297427, at \*1–2 (E.D. Tenn. Feb. 21, 2023) (quoting *Felder v. Johnson*, 204 F.3d 168, 170–71 (5th Cir. 2000)).

## III.    ANALYSIS

Here, § 2244(d)(1)(A) provides the statute of limitations' starting date, as it is the latest and most relevant of the statute's subsections. Respondent argues that Petitioner's judgments of conviction became final in 2001, when his judgments of conviction were entered (Doc. 23, at 4–5.) If the Court uses Petitioner's original judgments of conviction as a trigger for the federal statute of limitations, Petitioner's judgments of conviction became "final" on June 21, 2001, thirty days after Petitioner's judgments of conviction were entered on May 22, 2001. *See* Tenn. R. App. P. 4(a) (requiring notice of appeal to be filed within 30 days after entry of relevant judgment); *State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003) (holding judgment of conviction

4

following guilty plea becomes final thirty days after entry). Under this calculation, the federal statute of limitations began running the following day, June 22, 2001, and it ran without interruption until it expired on one year later on June 24, 2002.[3]

But the Court assumes, to Petitioner's benefit, that Petitioner's July 23, 2012, resentencing imposing an effective ten-year sentence and reflecting the mandatory sentence of community supervision for life created a new judgment that reset the AEDPA's statute of limitations under § 2244(d)(1)(A).[4] *See, e.g.*, *Freeman v. Wainwright*, 959 F.3d 226, 231 (6th Cir. 2020) ("Under *King*, any full resentencing creates a new judgment for AEDPA purposes.") (citing *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015)); *see also Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016) (holding limited resentencing imposing new, less favorable sentence constitutes a new judgment resetting AEDPA's one-year limitations period).

Even so, Petitioner's federal habeas petition is untimely, because the limitations period began running approximately thirty days later on August 22, 2012, and it ran uninterrupted until it expired on or about August 23, 2013. *See* § 2244(d)(1)(A); Tenn. R. App. P. 4(a); *Green*, 106 S.W.3d at 650. Accordingly, Petitioner must establish an entitlement to equitable tolling or make a "credible showing of actual innocence" for his 2024 federal petition to be deemed timely. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (finding it is the petitioner's burden to demonstrate equitable tolling applies); *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (holding "credible showing of actual innocence" may overcome AEDPA's limitations period).

---

[3] The one-year actually expired on June 22, 2001, but since that date fell on a Saturday, the Petitioner would have had until Monday, June 24, 2001, to file his petition. *See* Fed. R. Civ. P. 6(a).

[4] The Court notes that Plaintiff's resentencing occurred after he obtained the victims' affidavits in 2010, and thus, even assuming the affidavits constituted newly-discovered factual predicates that could not have been discovered earlier through due diligence, the resentencing date is the later "triggering" date under the statute. *Compare* § 2244(d)(1)(A) *with* § 2244(d)(1)(D).

### A. Equitable Tolling

To establish an entitlement to equitable tolling, a petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" to prevent timely filing. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Petitioner cites repeated court appearances, brought about by a string of his from community corrections and probation violations, as an excuse for his untimeliness. (*See* Doc. 2, at 15, 24.) These are not, however, extraordinary circumstances. And even if these events limited Petitioner's ability to prosecute his federal claims at some point in time, Petitioner waited more than a decade after the error coram nobis petition was filed (and dismissed) to file this action. Thus, Petitioner has failed to demonstrate sufficient due diligence and failed to carry his burden of demonstrating that he is entitled to equitable tolling of the federal limitations period. *See McClendon v. Sherman*, 329 F.3d 490, 494–95 (6th Cir. 2003) ("The petitioner bears the burden of demonstrating that he is entitled to equitable tolling.").

### B. Actual Innocence

Therefore, Petitioner's federal habeas petition may proceed only if he can demonstrate his actual innocence of his crimes of conviction. To do so, Petitioner must present "new reliable evidence. . . that was not presented at trial" that, when considered in conjunction with all the evidence, makes it "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup v. Delo*, 513 U.S. 298, 324, 327–28 (1995)). It is a standard that requires factual—not legal—innocence. *Bousley*, 523 U.S. at 623.

The Supreme Court has counseled "that the actual innocence exception should remain rare and only be applied in the extraordinary case." *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (citing *Shlup v. Delo*, 513 U.S. 298, 321 (1995)). This standard is only met in cases where

"a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin*, 569 U.S. at 401 (citation and internal quotation marks omitted); *see also Souter*, 395 F.3d. at 602 (explaining a "credible showing of actual innocence" exists "where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt").

Any delay or lack of diligence in Petitioner's pursuit of his claim of actual innocence is not an absolute bar to an actual-innocence claim, but timing is a relevant factor in evaluating the reliability of the proof of innocence. *See McQuiggin*, 569 U.S. at 399; *see also Schlup*, 513 U.S. at 332 (holding courts "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of . . . evidence [of actual innocence]"). When evaluating whether a petitioner has met this burden, the court assesses all reliable evidence of guilt or innocence, even evidence previously excluded or inadmissible under the rules of evidence at trial. *Schlup*, 513 U.S. at 327–28. That is, the court looks not just to the facts the petitioner admitted during the guilty plea, but also to "any evidence of his guilt that the Government has." *Id*.; *see also Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008) (holding reviewing courts must consider "any admissible evidence of [a] petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy").

Petitioner's claim of actual innocence relies on the fact that the victims' stepfather, Frank Payne, impregnated JK and was convicted of aggravated statutory rape and incest, and that the victims subsequently submitted affidavits alleging that their initial allegations against Petitioner were misapprehended because they intended to accuse Payne. (*See, generally*, Docs. 2, 24.) But the Court agrees with Respondent that proof of Payne's crimes does not demonstrate that

7

Petitioner did not commit the crimes for which he pleaded guilty and was convicted. Both men could have abused the victims in this case.

And while the victims' affidavits cast doubt on the facts underlying Petitioner's convictions, the timing undermines their credibility. The victims' affidavits concern events that occurred a decade earlier, when the victims were young, admittedly confused children. (*See, e.g.*, Doc. 19-2, at 28–34, 78, 80.) Courts have held that recantation testimony, especially when it is submitted belatedly, is "of little value" and "viewed with great suspicion." *Carter v. Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006); *Freeman v. Trombley*, 483 F. App'x 51, 61–64 (6th Cir. 2012) (finding recantation evidence presented ten years after witness testimony insufficient to support gateway actual-innocence claim where no explanation was offered for the significant delay); *see also Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring) (holding that petitioner had failed to demonstrate a credible claim of actual innocence "under the demanding *Schlup* standard" given that "recanting affidavits are always viewed with 'extreme suspicion'" and "new statements from witnesses years after the crime are inherently suspect" and "are to be viewed with a 'degree of skepticism'").

And crucially, Petitioner had the opportunity to fully present all his federal habeas evidence to the error coram nobis court, but he chose to voluntarily dismiss his petition with prejudice and therefore forfeit his opportunity to do so. (*See* Doc. 21-1, at 9–12.) If the victims' statements and JK's pregnancy were sufficient to prove Petitioner's innocence, Petitioner would have offered it at that time. But he did not. And if this evidence was not of sufficient reliability and character to prove Petitioner's innocence in 2012, it certainly would be insufficient to demonstrate Petitioner's factual innocence now. Therefore, the Court finds Petitioner's

additional, unjustified twelve-year delay in presenting this evidence is fatal to his attempt to excuse his federal petition's untimeliness.

Accordingly, the evidence presented by Petitioner is not reliable enough to factually prove that no reasonable jury would have convicted Petitioner, and he is not entitled to rely on the actual innocence gateway to open this time-barred petition.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, this Court must issue or deny a certificate of appealability ("COA") upon the entry of a final order adverse to the petitioner.  Additionally, Petitioner must obtain a COA before appealing this Court's decision denying federal habeas relief.  *See* 28 U.S.C. § 2253(c)(1).  Because the instant petition is rejected on procedural grounds, Petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order for a COA to issue.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Applying this standard, the Court concludes that a COA should be denied.

## V.   CONCLUSION

For the reasons set forth above, Respondent's motion (Doc. 22) will be **GRANTED**, the Respondent's motion for an extension of time to respond (Doc. 20) will be **DENIED as moot**, and this federal habeas petition will be **DISMISSED** with prejudice.  A certificate of appealability will be **DENIED**.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

9